**B. N. S. INTERNATIONAL SALES COR-PORATION, Plaintiff-Appellant,**

v.

**PETER ECKRICH & SONS, INC., Defendant-Appellee.**

**No. 13957.**

United States Court of Appeals Seventh Circuit.

March 28, 1963.

Clyde E. Shorey, Jr., Clyde E. Shorey, Chicago, Ill., Herbert Rubin, New York City, Shorey, Shorey & Floberg, Chicago, Ill., for appellant.

Hamilton Smith, Chicago, Ill., for appellee Peter Eckrich & Sons, Inc., McDermott, Will & Emery, Chicago, Ill., of counsel.

Before HASTINGS, Chief Judge, and KNOCH and KILEY, Circuit Judges.

KNOCH, Circuit Judge.

Plaintiff, B. N. S. International Sales Corporation, who is engaged in the business of importing and exporting foods, with its office in New York City, brought this action to recover damages occasioned by alleged breach of contract by defendant, Peter Eckrich & Sons, Inc., a sausage manufacturer, with its home office in Fort Wayne, Indiana, who refused to accept delivery of 300 long tons of cow meat.

The evidence indicates that Edgar C. Staren of John E. Staren Co., a Chicago food brokerage firm, had a telephone conversation on May 11, 1960, with Ernest R. Bauer, an officer of plaintiff. Mr. Staren told Mr. Bauer that he had a buyer for about 300 tons of New Zealand cow meat. Mr. Bauer said that plaintiff could supply it, giving details of price, terms of payment, time of arrival and discharge from vessel, etc., and authorizing Mr. Staren to sell the meat.

Mr. Staren then telephoned Benjamin J. Schwartz, of B. Schwartz & Company, a Chicago food dealer. It was stipulated that B. Schwartz & Company were acting for and on behalf of defendant. In the course of the telephone discussion of terms, Mr. Staren told Mr. Schwartz that plaintiff wished to include an arbitration clause, but Mr. Schwartz stated that he would not accept an arbitration clause, and that he wanted a contract sent to him

from plaintiff. This information was transmitted to Mr. Bauer who said he would take the question of arbitration under consideration and would send out a contract.

John E. Staren Co. then sent plaintiff a teletype message and mailed a "confirmation" to plaintiff and to defendant which stated certain of the terms as discussed in the conversation between Mr. Staren and Mr. Schwartz. Nothing was said about arbitration. The "confirmation" stated that discrepancies were to be reported immediately. Evidently no reports of discrepancies were made. As the terms outlined in the "confirmation" reflected the terms set out by defendant, no report would reasonably be expected.

On May 13, 1960, plaintiff sent defendant a contract for signature. The terms of the contract differed in several details from those stated in the confirmation, and also included an arbitration clause. May 16, 1960, Mr. Schwartz called Mr. Staren, pointed out the discrepancies, and stated that he considered the contract to be a repudiation of the confirmation.

Mr. Staren telephoned and, the same day, wrote Mr. Bauer asking for a corrected contract; he wrote again on May 20, 1960. May 23, 1960, Mr. Bauer sent Mr. Staren another contract which still failed to conform to the confirmation in that it included an arbitration clause. May 27, 1960, B. Schwartz & Company wrote Mr. Staren that defendant refused to make the purchase, wished the order canceled, and had acquired the needed meat elsewhere. About May 31, 1960, Mr. Staren told Mr. Bauer that defendant did not want the meat because defendant had not received a contract embodying the terms requested, whereupon Mr. Bauer had said he would send a new contract in line with Mr. Staren's letter of May 20, 1960. This new corrected contract, mailed to defendant June 22, 1960, still contained an arbitration clause. All the contracts called for acceptance by signature of the buyer.

June 24, 1960, plaintiff advised defendant that the meat would be delivered. The same day, Mr. Staren wrote plaintiff confirming a telephone conversation advising, pursuant to defendant's instructions, that defendant would not accept delivery.

Plaintiff sold the meat at terms less favorable than those offered to defendant and incurred certain expenses. The amount of plaintiff's damages, if plaintiff is entitled to damages, is not contested. Plaintiff seeks to recover $13,426.32.

J. R. Stephenson, a packinghouse products broker, testified for plaintiff that it was customary, in May 1960, for brokers to seek out importers of New Zealand cow meat, to solicit buyers, work out bids, and send a confirmation, setting forth the agreed terms, to buyer, and seller, the same broker representing both; that in only about 50% of the cases did the importer also send a contract of his own, which was designed for office record and which was not generally signed and returned; that discrepancies in the confirmation were reported promptly, and, if they could not be resolved, the broker would bear the loss. He testified further that the broker did not "stand in the middle" if the subsequent document deviated from the terms of the confirmation. He was not sure what happened in such a situation but did not consider that such variation constituted a repudiation of the confirmation.

Mr. Staren, however, testified that in transactions wherein he acted as broker, it was customary to exchange documents other than the broker's confirmation.

The District Judge, who tried the cause, without a jury, entered judgment for the defendant. On motion of plaintiff for amendment to the judgment, he again entered judgment for defendant. This appeal followed.

Plaintiff summarizes its argument as follows:

"A buyer who first calls a broker seeking to purchase imported cow meat and who negotiates for its purchase through the broker that acts on behalf of both buyer and seller

and who tells the broker that he accepts the terms of the offer, authorizes by these actions the broker to prepare and sign on behalf of the buyer a confirmation setting forth the terms of the agreement where it is the custom and practice in the trade for the broker, upon agreement between the buyer and seller, to draw up, sign and transmit to each a confirmation of the transaction."

Plaintiff lays stress on its assertion that dealings were initiated by Mr. Schwartz who called Mr. Staren. The sole support for this assertion in the record, to which our attention is directed by plaintiff, consists of two statements, not by Mr. Staren, but by Mr. Bauer, who testified respecting his telephone conversation with Mr. Staren:

"He said that he had a buyer for a large quantity of New Zealand meat, approximately 300 tons, to arrive in June and July, and if we were in a position to supply this."

and

"Mr. Staren called me, he said he had a buyer for such a quantity, and I authorized him to offer this quantity, I believe, but, I mean, he did not ask me 'Do you authorize me to offer this?'

"He asked me, he said 'I have a buyer. Will you be able to supply it?'"

In any event, in the light of the whole course of conduct of these negotiations, we do not regard the issue of whether Mr. Schwartz called Mr. Staren, or vice versa, as a controlling factor.

As the District Judge found, plaintiff clearly authorized John E. Staren Co. to act as plaintiff's agent. But the whole line of the proceedings (the "confirmation", followed in turn by a series of divergent contracts which elaborated on plaintiff's understanding of the terms of the proposed sale) showed the failure of a meeting of the minds. The District Judge came to this conclusion in both his initial and his revised memorandum opinions, although in entering judgment for defendant, he relied primarily on the failure to show that defendant authorized John E. Staren Co. to bind defendant to a contract.

It is apparent from the events briefly outlined above that plaintiff never did agree to sell to defendant on terms acceptable to defendant until after defendant had refused to accept delivery.

The District Court accepted the evidence adduced as proof of the existence of a custom in the trade to negotiate sales through a broker who would confirm the terms of sale in writing. Plaintiff construes the "confirmation" as the binding contract between the parties, and the subsequent contradictory "contracts" as invitations to modify the contract represented by the "confirmation". This theory is inconsistent with the conversations between Mr. Staren and Mr. Bauer. For example, long after receipt of the confirmation which included no arbitration clause, and after rejection of two contracts containing an arbitration clause, Mr. Bauer testified that he told Mr. Staren:

"I believe that I said we might go along with them on that but we would think about it."

Similarly, Mr. Staren testified that Mr. Schwartz stated at the outset:

"I want a contract sent to us from B.N.S."

The actions of the parties negative any reliance on the custom described by Mr. Stephenson.

We have considered with great care all other arguments raised on behalf of the plaintiff, but find them lacking in merit.

The judgment of the District Court is affirmed.

Affirmed.